[Cite as *State v. Gallagher*, 2023-Ohio-2124.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022CA0032 |
| NATHAN S. GALLAGHER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Coshocton Municipal Court, Case No. CRB2200375

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 26, 2023

APPEARANCES:

For Plaintiff-Appellee

ROBERT SKELTON
Coshocton Law Director

RICHARD J. SKELTON
Assistant Law Director
760 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

JEFFREY G. KELLOGG
5 South Washington Street
Millersburg, Ohio 44654

*Hoffman, J.*

**{¶1}** Defendant-appellant Nathan Gallagher appeals his conviction and sentence entered by the Coshocton Municipal Court, on one count of endangering children, following a bench trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On June 13, 2022, a complaint was filed in the Coshocton Municipal Court, charging Appellant with one count of endangering children, in violation of R.C. 2919.22(A), a misdemeanor of the first degree. Appellant appeared before the trial court for arraignment on the same day and entered a plea of not guilty. The trial court released Appellant on his own recognizance.

**{¶3}** The matter proceeded to bench trial on September 28, 2022. The following evidence was adduced at trial:

**{¶4}** Erin Mack is the mother of three children, a 13-year-old daughter ("V.B."), a 4-year-old daughter, and a 3-year-old son. Appellant is her son's father. Mack and Appellant arranged for Appellant to have visitation with the two youngest children on June 12, 2022. Mack planned to pick up the children at 8:00 p.m. Prior to the scheduled pick-up time, Mack contacted Appellant, advised him she was running late, and asked him if he would keep the children overnight or until she returned later in the evening. Appellant refused, explaining he had plans and had to work the next day. Mack and Appellant continued to communicate as Mack traveled back to town. Appellant eventually told Mack he needed to drop off the children and subsequently brought them to the home of Christine Ross where Mack was temporarily staying. V.B. was at the Ross home, but had been instructed not to open the door for anyone. Appellant left the two youngest children on the porch. Mack returned twenty to thirty minutes later.

{¶5} Mack indicated V.B. had watched the younger children before and was comfortable doing so. However, V.B. was upset because she did not know what to do as she had been instructed not to open the door for anyone, but did not want to leave her siblings outside. Mack explained Appellant was sitting in his vehicle in a nearby alley while the children were on the porch. Mack acknowledged she and Appellant had renewed their relationship.

{¶6} Christine Ross testified Mack and her three children occasionally would stay at her home. On June 12, 2022, Ross was away from the residence, running errands. Her son, Marcus Ross, contacted her to tell her he had received a text from Appellant, who asked Marcus to text Ross and tell her he (Appellant) was dropping Mack's two youngest children at her home. Ross instructed Marcus to tell Appellant she was not home and not to drop off the children. Appellant was already at the Ross home, disregarded Ross's instructions, deposited the children on the porch, and left. When Ross returned to her residence, the two youngsters were inside with V.B. Appellant "was nowhere in sight." Transcript of September 28, 2022 Bench Trial at 14. Ross contacted the Sheriff's Department.

{¶7} Ross described V.B. as upset as she did not know what to do. Ross stated she told V.B., "I understand you let them in, but you were told not to open the door for anybody. That is not your home and you had no business doing any of that." *Id.* at 16. Ross believed the children were in danger "[b]ecause [V.B.] is not a babysitter. * * * she lies, she steals, she does mean things to the kids. No, I've seen, I've seen what happens, she was not a, she's not a babysitter." *Id.*

**{¶8}**   Sergeant Wesly Wright Eppley with the Coshocton County Sheriff's Office testified he received a call from Ross indicating Appellant had dropped the two young children at her home when no one was there to supervise them.   Sergeant Eppley proceeded to the Ross home.   Ross informed Sergeant Eppley V.B. was "hysterical because she didn't know what to do with the two (2) younger children once she was there alone." *Id.* at 24.

**{¶9}**   Sergeant Eppley subsequently spoke with Mack, who informed him Appellant was supposed to have the children overnight for his visitation.   Mack explained Appellant told her he could not keep the children overnight and planned to drop them off although she told Appellant there was no one to supervise the children.   Sergeant Eppley also spoke with Appellant.   Appellant admitted he dropped off the children, but "thought he seen somebody inside the window who was possibly an adult." *Id.* at 25.   Appellant was unable to tell Sergeant Eppley who the person was.   Appellant could not explain why he left the children at the residence knowing no one was there to supervise them.   Appellant also admitted he was told not to drop the children at the home.

**{¶10}**  On re-direct, Mack identified the written statement she gave to Sergeant Eppley on the evening of the incident.   Mack read the statement into the record:

> Nathan Gallagher, my child's father was supposed to keep the kids for the night – his visitation.  He then decided to drop them off at my friend's house without anyone being present.  I was out for the night, my thirteen-year-old was home.  Nathan then showed up around nine (9) and dropped my children off to my thirteen-year-old without adult supervision.  I was

headed home and trying to get there before he abandoned them and he made numerous threats towards my friend Marcus Ross and threatened to abandon my children at the house of my friend. *Id.* at 30.

**{¶11}** When questioned about the disparity between the use of the word "abandon" in her statement to Sergeant Eppley and her testimony at trial V.B. watches the children all the time, Mack explained, "Right, but like I said I was under the impression at first that he (Appellant) had left the property completely and I think that that's what I meant by abandon; I [sic] was that he had dropped them off and left." *Id.* Questioned further, Mack stated, "I mean maybe [abandon] was a wrong choice of words I guess." *Id.* Mack added, "No, I feel that he left the children there, but what he did was stupid, but I think abandoned was probably the wrong word to use." *Id.* Mack continued, "What he did was stupid and wrong, but he didn't, he still had eyes on them then they weren't in danger." *Id.* at 32.

**{¶12}** Appellant testified in his own defense. Appellant stated Mack contacted him and asked if he could keep the children overnight. Appellant informed Mack he could not because he had to work in the morning. Appellant offered to drop the children at Ross's home, but Mack told him she would be back soon. Appellant subsequently brought the children to Ross's home because people at his residence had started drinking and he did not want the children around anybody drinking.

**{¶13}** Appellant and his two friends transported the children to Ross's home. Appellant's two friends walked the children to the front door. Appellant remained in the car as he was not allowed on the property. Appellant's friends knocked several times,

but no one answered.  As they turned to walk back the vehicle, V.B. answered the door and took the children inside.  Appellant stated they left the residence after the children were inside the house.  Appellant denied leaving the children unattended on the porch.

**{¶14}** After hearing all the evidence, the trial court found Appellant guilty, sentenced him to thirty days in jail, and imposed court costs and fines.  The trial court suspended Appellant's sentence, placed him on supervised probation for a period of one year, and ordered him to complete a parenting program.  The trial court memorialized Appellant's conviction and sentence via Judgment Entry filed September 28, 2022.

**{¶15}** It is from this conviction and sentence Appellant appeals, raising the following error:

APPELLANT'S CONVICTION FOR VIOLATING R.C. 2919.22(A), ENDANGERING CHILDREN, WAS NOT SUPPORTED BY THE WEIGHT OR SUFFICIENCY OF THE EVIDENCE.

I

**{¶16}** In his sole assignment of error, Appellant challenges his conviction for endangering children as against the manifest weight and sufficiency of the evidence.

**{¶17}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, paragraph two of the syllabus (1997). Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, while weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–

387. A finding a conviction is supported by the manifest weight of the evidence, however, necessarily includes a finding the conviction is supported by sufficient evidence and will therefore be dispositive of the issues of sufficiency of the evidence. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11.

{¶18} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶19} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶20} Appellant was convicted of one count of child endangering, in violation of R.C. 2919.22(A), which provides, in relevant part:

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

* * *

R.C. 2919.22(A).

{¶21} At trial, Mack testified Appellant had visitation with the two young children on June 12, 2022. Mack planned to pick up the children at 8:00 p.m., however, she was running late and asked Appellant to either keep the children overnight or keep them until she returned. Appellant refused and, instead, took them to the home of Christine Ross, where Mack and her three children were temporarily staying. Appellant knew there was no adult at the residence to supervise the children. Appellant was specifically told not to bring the children to Ross's home. Although V.B., Mack's 13-year-old daughter was at the Ross home, she had been instructed not to open the door for anyone or to let anyone in the house. Appellant left the two young children on the front porch and left. Eventually, V.B. opened the door and brought her siblings inside. When Ross returned home, she called the Coshocton County Sheriff's Office.

{¶22} Sergeant Eppley spoke with Mack when she arrived at Ross's home. Mack informed him Appellant was supposed to have the children overnight for his visitation. Mack explained Appellant subsequently informed her he could not keep the children overnight and planned to drop them off at Ross's home despite the fact she told him no

one was there to supervise the children. Sergeant Eppley also spoke with Appellant. Appellant admitted he dropped off the children, but "thought he seen somebody inside the window who was possibly an adult." Tr. at 25. Appellant was unable to tell Sergeant Eppley who the person was. Appellant could not explain why he left the children at the residence knowing no one was there to supervise them. Appellant also admitted he was told not to drop the children at the home.

{¶23} Based upon the foregoing and the entire record in this matter, we find Appellant's conviction was not against the manifest weight of the evidence and was based upon sufficient evidence.

{¶24} Appellant's sole assignment of error is overruled.

{¶25} The judgment of the Coshocton Municipal Court is affirmed.

By: Hoffman, J.
Gwin, P.J. and
Baldwin, J. concur